UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARTHUR JONES, III,

      Petitioner,

-vs-                               Case No.   8:17-cv-1834-T-36SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

## ORDER

Petitioner, a Florida prisoner, initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and memorandum in support (Doc. 2). Respondent filed a response in opposition to the petition (Doc. 7), to which Petitioner replied (Doc. 19). Upon consideration, the petition will be denied.

## I. BACKGROUND

Petitioner was convicted of two counts of improper exhibition of a dangerous weapon or firearm, and one count each of aggravated assault with a firearm, armed burglary of a dwelling, possession of cocaine, and fleeing or eluding (Respondent's Ex. 2, Vol. III, pp. 451-52; Ex. 3). He was sentenced to time served on the improper exhibition convictions, 10 years in prison on both the aggravated assault conviction and fleeing and eluding conviction, life in prison on the armed burglary conviction, and 5 years in prison on the possession of cocaine conviction (Respondent's Ex. 4). The convictions and sentences were affirmed on appeal (Respondent's Ex. 8).

1

Petitioner filed a petition alleging ineffective assistance of appellate counsel (Respondent's Ex. 9), which was denied (Respondent's Ex. 10). He filed a motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure, alleging ineffective assistance of trial counsel (Respondent's Ex. 11), an amended Rule 3.850 motion (Respondent's Ex. 12), and a second amended Rule 3.850 motion (Respondent's Ex. 14).   The motions were denied (Respondent's Ex. 15) and the denial was affirmed on appeal (Respondent's Ex. 17).

Petitioner filed his petition for a writ of habeas corpus (Doc. 1) and memorandum in support (Doc. 2) in this Court alleging eight grounds for relief.

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

**A. Standard of Review Under the AEDPA**

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1]  *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90.   "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test
> even what most good lawyers would have done. We ask only whether some

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

> reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## C. Exhaustion of state court remedies; procedural default

Before a federal district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358–59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982). The petitioner must show at least a reasonable probability of a

different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327–28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495–96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## III. ANALYSIS

### Ground One: MR. JONES [sic] FIFTH AND FOURTEENTH AMENDMENT RIGHTS TO THE U.S. CONSTITUTION WAS [sic] VIOLATED WHEN IMPROPER COMMENTS WAS [sic] MADE BY THE TRIAL JUDGE IN CONJUNCTION WITH THE PROSECUTORS [sic] CLOSING ARGUMENTS ACTED TO PROVIDE [sic] PETITIONER A FAIR TRIAL

Petitioner contends that improper comments by the trial judge to the jury panel coupled with improper comments by the prosecutor during closing argument denied him a fair trial in violation of his rights under the Fifth and Fourteenth Amendments. Petitioner complains that the trial judge made the following prejudicial comments to the jury panel:

1. Petitioner was charged by a criminal information, and an information is like a civil complaint in that it is filed "only if there is a legitimate basis for doing so";

2. the duty to serve as a juror is similar to the duty to serve your country in the military;

3. when one prospective juror indicated prejudice toward anyone who assaults a police officer, the judge asked the jurors to raise their hand if they were for murder, sexual battery, burglary, or grand theft; and

7

4.the prosecutor is not required to prove every fact beyond a reasonable doubt.

And Petitioner contends that the following comments by the prosecutor during closing argument were improper, inflammatory, or amounted to a personal attack on defense counsel:

1. Here's the good news. Thank goodness. No one including Mr. Jones was injured not past the cuts Ms. Ellecya James suffered.

2. The fact is he didn't care could very well be the mantra of his actions through everything that happened.

3. The victim vilified. It is tough to dignify that argument, whatsoever. I want to go to something else Counsel said first. And I'm sure Mr. McClure did not intend to mislead you in his argument.

4. Now, did the gun discharge? Thank goodness, no. Did it operate the way it was designed to? Thank goodness, no.

5. For heaven's sake, he could have just turned around and gone the other direction? So to heck with you, Mr. Officer. Heck is probably not for (sic) word I really wanted to use.

Respondent argues that this claim is procedurally barred from review by this Court because Petitioner failed to fairly present the federal nature of the claim to the state courts (Doc. 2, pp. 4-7). The Court agrees.

Before a federal district court can review a federal claim presented in a federal habeas petition, the "federal claim must be fairly presented to the state courts." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). To fairly present a federal claim to the state courts, a habeas applicant must "'do more than scatter some makeshift needles in the haystack of the state court record.'" *Id*. (quoting *Kelley,* 377 F.3d at 1345). On direct appeal, that's exactly what Petitioner did in his Initial Brief with regard to this claim. He merely cited the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution without arguing how these Amendments were implicated by the judge and

prosecutor's statements (Respondent's Ex. 5, pp. 14-23). His argument focused on, and cited to state cases addressing, fundamental error under Florida law (*Id.*). He never argued the federal standards for overturning a conviction based on a prosecutor or judge's improper comments. *See United States v. Young*, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial."); *United States v. Anderson*, 542 F. App'x 893, 897 (11th Cir. 2013) ("There must be a 'clear effect on the jury' for us to reverse based on improper comments by the trial judge.") (citing *United States v. Hill*, 643 F.3d 807, 845 (11th Cir.2011)).

After reviewing the record, the Court concludes that Petitioner did not fairly present his federal constitutional claim to the state courts. *See McNair*, 416 F.3d at 1303 ("McNair's references to federal law in his state habeas proceedings are exactly the type of needles in the haystack that we have previously held are insufficient to satisfy the exhaustion requirement."). He therefore failed to exhaust his state court remedies. Since he is now barred by state procedural rules from exhausting the substance of his federal claim, procedural default exists for purposes of federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722 (1991). And because he has not shown cause and prejudice or a fundamental miscarriage of justice in order to excuse his default, his claim in Ground One is barred from federal habeas review. *See Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir.1993).

Even if Petitioner had fairly presented a federal constitutional claim in state court, it would remain procedurally barred in this Court. Florida has a rule that precludes appellate review of improper prosecutorial and judicial remarks unless either a contemporaneous objection

9

is lodged at trial or the prosecutor or judge's remarks constitute fundamental error. *McDonald v. State*, 743 So.2d 501, 505 (Fla.1999); *Moore v. State*, 701 So. 2d 545, 549 (Fla. 1997) (to preserve the alleged improper comment of the trial judge, a contemporaneous objection must be made); *Harmon v. State*, 527 So. 2d 182, 187 (Fla. 1988) ("In the absence of a contemporaneous objection, a conviction will not be reversed because an improper comment is made unless the comment is so prejudicial so as to amount to fundamental error."). When a state court decision was based on the contemporaneous objection rule, considerations of comity require that this Court refrain from considering the constitutional claim on the merits. *McKinon v. Wainwright*, 705 F.2d 419, 421 (11th Cir.1983) (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)).

In affirming Petitioner's convictions, the appellate court cited to cases concluding that the comments in the trial court did not constitute fundamental error (Respondent's Ex. 8). Therefore, the appellate court applied Florida's contemporaneous objection rule and implicitly found Petitioner's claim regarding improper prosecutorial and judicial comments procedurally barred. Petitioner has not demonstrated cause for the default and actual prejudice, nor has he demonstrated that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Therefore, the Court finds that Ground One, Petitioner's improper prosecutorial and judicial comments claim, has been procedurally defaulted and is not subject to review by this Court.[1]

**Ground Two: TRIAL COURT VIOLATED PETITIONER [sic] FIFTH AMENDMENT AND ARTICLE 1 SECTION 9 OF THE FLORIDA CONSTITUTION WHEN BY ALLOWING THE JURY TO HEAR COLLATERAL CRIME EVIDENCE OF RAPE IN PASCO COUNTY AND [sic] ERROR THAT WARRANT [sic] A NEW TRIAL.**

---

1 Even if Ground One was not unexhausted and procedurally barred, it would fail on the merits. As explained in denying Grounds Six and Seven below, the prosecutorial and judicial comments were not improper.

Petitioner contends that he was denied his Fifth Amendment right to a fair trial when the State was allowed to present evidence of his involvement in an uncharged kidnapping and sexual battery. The evidence of those offenses, he argues, was presented solely to inflame the passion of the jury and to show Petitioner's bad character.

Respondent argues that this claim is both procedurally barred and without merit. The Court agrees. This claim was not exhausted as a federal constitutional claim in state court. As the Eleventh Circuit Court of Appeals has explained:

> [T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.

*Kelley*, 377 F.3d at 1345 (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir.1988)). Petitioner's passing reference to the "Fifth, Sixth and Fourteenth Amendments to the United States Constitution" in his Initial Brief on direct appeal (*see* Respondent's Ex. 5, pp. 26-27) does not satisfy this standard.

Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice in order to excuse his default. And he is now precluded under state law from presenting the federal issue on appeal. Accordingly, this claim is procedurally barred from review in this Court.

Even if the claim were not procedurally barred, it would fail on the merits. The record contains the following. Prior to trial, the defense moved in limine to exclude evidence related to Petitioner's convictions for kidnapping, sexual battery, and witness tampering in Pasco County. At the hearing on the motion, the State argued that the evidence would show that Petitioner

broke into the home of his former girlfriend Ellecya James in Pinellas County, abducted her at gunpoint, and drove her to Pasco County where he committed sexual battery on her (Respondent's Ex. 2, Vol. I, pp. 8-11). When he drove her back to Pinellas County, she jumped out of the vehicle, and Petitioner attempted to strike her with the vehicle (*Id*.). The State argued that the facts concerning the events in Pasco County were inextricably intertwined with the events in Pinellas County because the sexual battery and kidnapping were part of the entire series of events, and evidence of those events was necessary to establish the element of intent to commit an offense for the burglary count (*Id*., pp. 10-11). The defense argued information concerning the kidnapping and sexual battery should be kept out, stressing that it was highly prejudicial and not inextricably intertwined with the events in Pinellas County (*Id*., pp. 11-12).

In granting the motion in part and denying it in part, the court stated:

> Paragraph four is granted. Paragraph three is denied, but with the caveat that there will be no mention of convictions for kidnapping, sex battery or tampering with witness. The Court will allow facts to be testified to by witnesses that will touch on those offenses, but I'm instructing counsel for the State not to make them a feature of the case.

> So again, they're not going to hear this case in a vacuum.   Thank you.

(*Id*., p. 12).

In sum, the state trial court implicitly found that the kidnapping and sexual battery in Pasco County were facts that were inextricably intertwined with the events in Pinellas County. On direct appeal, Petitioner argued that the trial court erred by allowing evidence of collateral crimes because the crimes were not inextricably intertwined with the charged offenses and admitted solely to inflame the jury and show bad character (Respondent's Ex. 5, pp. 26-27). The appellate court affirmed the decision of the trial court (Respondent's Ex. 8).

Federal courts possess only limited authority to consider state evidentiary rulings in a habeas corpus proceeding. Relief will be granted based on an evidentiary ruling only if the ruling affects the fundamental fairness of the trial. *Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir.1998) (per curiam), *cert. denied*, 528 U.S. 1082 (2000). "Because a federal habeas corpus case is not a vehicle to correct evidentiary rulings, we 'inquire only to determine whether the error was of such magnitude as to deny fundamental fairness to the criminal trial.' *Alderman v. Zant*, 22 F.3d 1541, 1555 (11th Cir.) (quotation omitted), *cert. denied*, 513 U.S. 106 (1994)." *Baxter v. Thomas*, 45 F.3d 1501, 1509 (11th Cir.), *cert. denied*, 516 U.S. 946 (1995). Indeed, with respect to an erroneous evidentiary ruling, relief should be granted by this Court only "if the state trial error was material as regards a critical, highly significant factor." *Id.*

Upon review, the evidence of the kidnapping and sexual battery, which took place directly after the burglary at issue, was inextricably intertwined with the burglary case. Evidence of the kidnapping and sexual battery of Victim James was relevant to the element of intent to commit an offense for the burglary count.[2] By admitting the evidence, there was some explanation as to why Petitioner broke into Victim James' house and abducted her.

The implicit finding of the trial court that the facts concerning the offenses committed in Pasco County were inextricably intertwined with the offenses in Pinellas County is supported by the record. Petitioner broke into the Pinellas County home of his former girlfriend, Victim James (Respondent's Ex. 2, Vol. III, pp. 328-29). He pulled her by her hair out of her house and forced her into his vehicle (*Id.*, p. 330). He drove her to Pasco County where he committed a sexual battery on her (*Id.*, pp. 331-32). In the context of this trial, the admission of the evidence of the

---

2  With regard to the armed burglary of a dwelling count, the jury was instructed, in pertinent part: "Element two, at the time of the entering the structure, Arthur Jones had the intent to commit an offense there in that structure."

kidnapping and sexual battery did not affect the fundamental fairness of the proceeding. That evidence was relevant to the burglary offense and necessary to show the entire context out of which the charged crimes occurred. And the evidence did not become the feature of the trial, since Victim James responded to only five carefully worded questions regarding the events in Pasco County (*Id*., pp. 332-33).

Petitioner has failed to show that the trial court's decision to allow the evidence of the kidnapping and sexual battery was contrary to clearly established federal law, as it did not result in a fundamentally unfair trial. Therefore, Ground Two does not warrant relief.

**Ground Three: MR. JONES [sic] DUE PROCESS RIGHT [sic] WERE VIOLATED WHEN THE TRIAL COURT GIVEN [sic] MISLEADING AND CONFUSING "REMAINED IN" BURGLARY INSTRUCTION**

Petitioner contends that he was denied due process when the trial judge gave a jury instruction on burglary that was confusing and misleading. The instruction Petitioner challenges is:

> Now the law on burglary. To prove the crime of burglary, the State must prove the following two elements beyond a reasonable doubt:
>
> Element one, Arthur Jones entered or remained in a structure owned by or in the possession of Ellecya James.

(Respondent's Ex. 2, Vol. III, p. 426). Petitioner argues that including "remained in" in the instruction was improper because the State was not arguing that Petitioner unlawfully remained in James' home but rather unlawfully entered her home. He further argues that the "remained in" language was confusing and could have caused the jury to find him guilty of burglary.

Respondent argues that this claim is procedurally barred from review in this Court because it was not raised on direct appeal and was not raised as a federal due process violation claim in his petition alleging ineffective assistance of appellate counsel. The Court agrees.

Petitioner's Initial Brief on direct appeal reveals that he did not challenge the burglary jury instruction (Respondent's Ex. 5). And when he challenged the instruction in his petition alleging ineffective assistance of appellate counsel, he did not allege a federal due process violation (Respondent's Ex. 9, pp. 14-16). Rather, he solely argued that including "remained in a structure" in the instruction was fundamental error under Florida law (*Id*.). Petitioner therefore failed to fairly present a federal due process violation to the state courts concerning this claim.

Petitioner fails to demonstrate cause and prejudice excusing the default of his federal due process claim. *Carpenter*, 529 U.S. at 451; *Carrier*, 477 U.S. at 495–96. He neither alleges nor shows that the fundamental miscarriage of justice exception applies. *Henderson*, 353 F.3d at 892. Because Petitioner fails to proffer specific facts showing an exception to procedural default, the substantive due process claim alleged in Ground Three is procedurally barred from federal review. Accordingly, Ground Three warrants no relief.

**Ground Four: MR. JONES [sic] FIFTH, SIXTH, AND FOURTEENTH AMENDMENT [sic] TO THE U.S. CONSTITUTION WAS [sic] VIOLATED [sic] THERE WAS INSUFFICIENT EVIDENCE TO SHOW THAT HE WIELDED A "FIREARM" AND THEREFORE THE JUDGMENT OF ACQUITTAL SHOULD HAVE BEEN GRANTED.**

Petitioner contends that there was insufficient evidence that he possessed a firearm to support his convictions for burglary with a firearm (Count 5) and aggravated assault with a firearm (Count 4). He asserts that the only evidence was Victim James' belief that Petitioner was in possession of bullets. He appears to argue that since a firearm was never recovered, tested, or

examined, and there was no evidence that it was fired, no evidence proved that he was in possession of a firearm.

This claim was raised in Point Two of Petitioner's Initial Brief on direct appeal (Respondent's Ex. 5, pp. 23-25). The appellate court affirmed the convictions without a written opinion (Respondent's Ex. 8).

Petitioner has failed to show that the state appellate court's affirmance was contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts. In federal habeas proceedings, a petitioner's challenge to the sufficiency of the evidence will provide relief "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). In Florida, "[e]yewitness testimony that the defendant possessed a firearm is sufficient evidence to support a finding that the defendant was in possession of a firearm" even when the weapon is not introduced into evidence. *Akins v. State*, 838 So. 2d 637, 639 (Fla. 5th DCA 2003) (citations omitted). Moreover, "a conviction does not require a showing that the firearm is loaded or operational." *Id.* (citation omitted).

There was ample eyewitness testimony that Petitioner possessed a firearm at the time of the crime. Malcolm James, Victim James' cousin, testified that he saw Petitioner take out a pistol, waive it at everyone, and then point it at Victim James and ask if she wanted "to feel hot lead." (Respondent's Ex. 2, Vol. II, p. 267). He further testified that the gun was dark and looked like a revolver, a firearm with which he was familiar (*Id.*, pp. 275-76). Anquante Fowler testified that he saw Petitioner point and waive what appeared to be a gun outside of Petitioner's car (*Id.*,

Vol. III, pp. 310-12). The gun was dark (*Id.*, p. 315). Victim James testified that after Petitioner

broke into her house, he came toward her with a gun in his hand and hit her in the face with it

(*Id.*, p. 329). After he forced her into his car, he threatened to shoot her (*Id.*, p. 333). While in the

car, Petitioner held the gun by his stomach and pointed it at Victim James (Id., p. 335). When she

got out of the car, Petitioner pointed the gun at her and pulled the trigger a few times, but it only

made a clicking noise (*Id.*, pp. 339-40). Petitioner showed the bullets to Victim James, and the

bullets were in the gun (*Id.*, p. 356).

Petitioner fails to establish that no rational trier of fact could have found him guilty

beyond a reasonable doubt because of insufficient evidence that he possessed a firearm.

Accordingly, he is not entitled to relief on Ground Four.

**Ground Five: MR. JONES [sic] FIFTH, SIXTH, EIGHTH AND FOURTEENTH
AMENDMENT [sic] TO THE U.S.C. WAS VIOLATED WHEN HE WAS
UNCONSTITUTIONALLY CONVICTED OF POSSESSION OF COCAINE WITHOUT
AND [sic] REQUIREMENT [sic] INSTRUCTION THAT HE HAD KNOWLEDGE OF
THE ILLICIT NATURE OF THE SUBSTANCE.**

Petitioner contends that his conviction for possession of cocaine is unconstitutional

because the statute under which he was convicted, Chapter 893.13, Florida Statutes, does not

require knowledge of the illicit nature of the substance as an element of the offense. In support,

he cites *Shelton v. Sec'y, Dep't of Corr.*, 802 F.Supp.2d 1289 (M.D. Fla. 2011) (*see* Doc. 2, pp.

17-19). *Shelton* held § 893.13, Fla. Stat., as amended by § 893.101, Fla. Stat., unconstitutional on

its face. Section 893.13, Fla. Stat., concerns the sale, manufacture, delivery, and possession of

controlled substances.

Petitioner's claim is without merit. The *Shelton* decision was later reversed, *see Shelton v.
Sec'y, Dep't of Corr.*, 691 F.3d 1348 (11th Cir. 2012) ("*Shelton II*"), and the Florida Supreme

17

Court held that § 893.13, Fla. Stat. is constitutional in *State v. Adkins*, 96 So.3d 412 (Fla. 2012).

Accordingly, Petitioner's claim is foreclosed by *Shelton II. See Collins v. Sec'y, Dep't of Corr.*,

507 F. App'x 915, 916 (11th Cir.2013) (affirming denial of habeas petition based on the decision

in *Shelton II* ); *Pride v. Shelton v. Sec'y, Dep't of Corr.*, 2019 WL 4648503 at * 6-7 (N.D.Fla.

August 9, 2019) (deciding that habeas petitioner's claim that § 893.13, Fla. Stat., is

unconstitutional because it eliminated knowledge of the illicit nature of the substance as an

element of the offense was foreclosed by *Shelton II*). Ground Five therefore warrants no relief.

**Ground Six: MR. JONES [sic] SIXTH AND FOURTEENTH AMENDMENT RIGHTS OF THE U.S.C. WERE VIOLATED WHEN COUNSEL FAILED TO OBJECT WHEN THE TRIAL COURT MADE CERTAIN IMPROPER COMMENTS DURING JURY SELECTION.**

Petitioner contends that counsel was ineffective in failing to object to three improper

comments by the trial judge during jury selection. First, he argues that the judge bolstered the

credibility of the State's case when he compared a criminal information to a complaint filed in a

civil case, then subsequently stated that a civil complaint is filed only when there is a legitimate

basis to do so. Second, he argues that potential jurors who may have had legitimate concerns

about serving on the jury may not have voiced those concerns because the judge compared the

duty to serve on a jury with the duty to serve one's country in the military. Third and finally, he

argues that the judge minimized the State's burden of proof by telling the jury pool that the State

is not required to prove every fact beyond a reasonable doubt.

This claim was raised in state court in Instance One of Petitioner's second amended Rule

3.850 motion (Respondent's Ex. 14, pp. 4-7). In denying the claim, the state post-conviction

court stated:

Defendant alleges that trial counsel was ineffective for failing to object to the court's erroneous instructions during voir dire. Specifically, he argues that the court 1) erroneously compared the felony information to a civil complaint, 2) improperly compared jury service to military service, thereby diminishing objections from the jurors, and 3) deviated from the standard reasonable doubt instruction. Defendant alleges that he was prejudiced by the court's improper comments and that, if counsel made a proper objection, the outcome of the jury panel and the trial would have been different. This Court previously reserved ruling on this claim.

The Court finds Defendant's claim is without merit. The record reflects that, during voir dire, the trial court explained that jury service is a duty required of all citizens, that the felony information is the charging document which is not proof of guilt, and explained the difference between the burdens of proof in a civil trial compared to criminal trial. (*Exhibit B: Trial Transcript, pp. 17-18, 31-32, 42-53*). There is nothing improper about any of the court's comments on these matters. In context, the court's description of jury service as a civic duty was clearly intended to encourage jurors to be forthcoming during voir dire, which benefits both the State and the defense. Moreover, the court's explanation of the structure of the court system and relative burdens of proof in criminal and civil cases accurately stated the law and emphasized that the members of the jury must consider Defendant innocent until proven guilty; the court even described Defendant as wearing a metaphorical "cloak of innocence," which could not be removed unless the State proved every element of each offense beyond a reasonable doubt. (*Exhibit B: Trial Transcript, pp. 51-53*). The Court finds counsel had no legal basis to object to the trial court's instructions and was not ineffective for failing to raise a baseless claim.

Moreover, the Court finds Defendant's allegation that the entire panel was prejudiced by these statements to be entirely speculative. Speculation is insufficient to establish a claim for postconviction relief. See Spencer v. State, 842 So. 2d 52, 63 (Fla. 2003); Bass v. State, 932 So. 2d 1170, 1172 (citing Jones v. State, 845 So. 2d 55, 64 (Fla. 2003)("pure speculation cannot be a basis for postconviction relief.")). "The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his [or her] verdict solely upon the evidence presented and the instructions on the law given to him [or her] by the court." Carratelli v. State, 961 So. 2d 312, 318 (Fla. 2007) (quoting Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984)). Defendant fails to establish any reasonable probability that any juror selected to try the case was actually biased. See id. at 324 (where postconviction motions alleges trial counsel was ineffective with respect to jury selection, the defendant must demonstrate that a juror was actually biased). In sum, Defendant fails to establish that counsel was ineffective or that counsel's alleged errors resulted in a biased juror serving on the panel. This claim is denied.

(Respondent's Ex. 15, pp. 3-4).

The state post-conviction court found that counsel was not deficient in failing to object to the trial judge's comments because the comments were appropriate and therefore any objection would have been overruled. And the court further found that Petitioner failed to demonstrate that he was prejudiced by the judge's comments because Petitioner's allegation that the jury pool was improperly influenced by those comments was purely speculative. Petitioner has failed to show that the state appellate court's silent affirmance of the state post-conviction court's denial of this claim was an unreasonable application of *Strickland* or resulted in a decision that was based on an unreasonable determination of the facts.

**1. Comparing jury duty to military service was not improper**

In response to prospective juror Lord's statement that "[t]he only problem I have is setting aside two days[,]" the trial judge stated:

> All right. You know, when you're summoned to do jury duty, we know it's an inconvenience. We know that there is somewhere else that you normally would be. That's why they call it "duty." They don't call it "vacation." They call it "duty."
>
> Think about for a moment military duty. Where does that duty take people? It takes them possibly to boot camp. It takes them to foreign countries. Sometimes on battlefields. Sometimes that duty takes a life. Sometimes that duty takes a limb. It takes them away from their house, their family, their job, their community for extended periods of time. Now compare it with this duty. It could be into a second day. It kind of pales in comparison. But it is a required duty of all citizens when you're called upon.

(Respondent's Ex. 2, Vol. I, pp. 17-18).

There was nothing improper about this statement. The judge accurately stated that jury service is a duty of all citizens and, like military service, not to be dismissed lightly. *See, e.g.,*

*Thiel v. S. Pac. Co.*, 328 U.S. 217, 224 (1946) ("Jury service is a duty as well as a privilege of citizenship; it is a duty that cannot be shirked on a plea of inconvenience or decreased earning power."). The judge did not go so far as to tell the prospective jurors that they were required to serve no matter the hardship it may cause. Therefore, because the judge's statement was not improper, counsel was not deficient in failing to object. Moreover, Petitioner has shown no prejudice from the statement because he has failed to show that a juror who had an undue hardship served on the jury and that he was deprived a fair and impartial jury. *See Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir.1982) (a defendant's Sixth Amendment right to a fair and impartial jury is not violated unless the defendant can show that a member of the jury which heard his case was biased); *Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir.1995) ("To maintain a claim that a biased juror prejudiced him,. . .[a habeas petitioner] must show that the juror was actually biased against him." (citing *Smith v. Phillips*, 455 U.S. 209, 215 (1981)).[3]

## 2. The comparison of a criminal information to a civil complaint in a criminal case was not improper

With regard to Petitioner's contention that counsel was ineffective in failing to object when the judge stated that "a civil complaint is <u>only</u> filed if there is a legitimate reason to do so" then compared a criminal information to a civil complaint (*see* Doc. 2, p. 21), the state courts' denial of the claim was not objectively unreasonable. First, Petitioner misrepresents what the judge actually said. The judge did not say that "a civil complaint is only filed if there is a legitimate reason to do so." Rather, he actually said that in a civil case "if a legitimate cause of action exists, the lawyer will draw up a document, and we don't give the document any kind of

---

3 In fact, despite the comparison to military duty, the record reveals that several potential jurors voiced concerns about serving on the jury (Respondent's Ex. 2, Vol. I, pp. 37-38, 47, 53-54).

fancy, special name. We just call it a complaint." (Respondent's Ex. 42, Vol. I, p. 42). The judge's actual statement is not nearly as strong as the statement Petitioner claims the judge made because it does not clearly state that a complaint is filed only when there is a legitimate reason to do so. And even if it is as definitive, the judge never told the jury that a criminal information is only filed if there is a legitimate reason to do so (*See Id*., p. 45). Rather, when discussing similarities between a civil and criminal case, the judge stated "[t]his document that I read to you is the felony Information. It's, in effect, the complaint." (*Id*.).

Second, after the judge made his statement regarding a civil complaint (*id*., p. 42), he spent a significant amount of time explaining the process in a civil trial before he compared an information in a criminal case to a civil complaint (*Id*., pp. 42-45). Consequently, any impact the comparison had on the jury likely was diminished by the length of time between when the judge made his comment about a civil complaint and when he compared an information to a complaint.

Third and finally, Petitioner cannot show prejudice. Even if the jury were given the impression that an information is filed when there "is a legitimate reason to do so," the judge spent significant time explaining to the jury pool that no matter the number or type of charges brought against a criminal defendant, the defendant is always presumed innocent, and the State has the burden to overcome that presumption (*Id*., pp. 46-49). And when prospective juror Lord stated that he would not presume Petitioner innocent where a police officer and three other people accused Petitioner of committing the charged offenses (*id*., p. 47), the judge explained that despite the charges and accusations, the jurors must presume Petitioner was innocent (*Id*., pp. 47-48). Therefore, the judge made it clear to the prospective jurors that even though an

information was filed charging Petitioner with committing offenses, he was presumed innocent until the State overcame that presumption with evidence.

### 3. The comments on reasonable doubt were proper

Finally, with regard to Petitioner's contention that counsel was ineffective in failing to object to the judge's comments that allegedly deviated from the standard instruction on reasonable doubt and "minimized" the State's burden of proof, the state courts' denial of the claim was not objectively unreasonable. Petitioner argues that "[i]n effect, the jurors were told that the State did not have to prove every element of charged crimes." (Doc. 2, p. 22). To the contrary, the judge definitively told the jury pool that "[t]he Prosecutor must prove all those elements or building blocks beyond a reasonable doubt before the jury can make a finding of guilt[,]" and "[y]ou have to prove all the elements of the offense before there can be a conviction. All the elements. Not some of them. The Prosecutor must prove all of them." (Respondent's Ex. 2, Vol. I, pp. 50-51). And the judge's comment that the prosecutor does not "have to prove every fact in the case beyond a reasonable doubt" (*see id.*, p. 50) is an accurate statement of the law because the State is required to prove only enough facts to prove the essential elements of the offenses. *See United States v. Valencia*, 600 F.3d 389, 432 (5th Cir. 2010) ("We have long held that the government need only prove facts alleged in the indictment which meet the essential elements of the crime.").

In sum, Petitioner has failed to demonstrate that the state courts' denial of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, Ground Six warrants no relief.

**Ground Seven: MR. JONES [sic] SIXTH AND FOURTEENTH AMENDMENT RIGHTS OF THE U.S.C. WERE VIOLATED WHEN COUNSEL FAILED TO OBJECT TO THE IMPROPER COMMENTS MADE BY THE PROSECUTOR DOING [sic] CLOSING ARGUMENTS.**

Petitioner contends that defense counsel was ineffective in failing to object to the prosecutor's following comments during closing argument:

(A) "Here's the good news. Thank goodness no one, including Mr. Jones, was injured."

(B) "The fact is, he didn't care could very well be the mantra of his actions throughout everything that happened."

(C) "The victim vilified."

(D) "I'm sure that Mr. McClure did not intend to mislead you in his argument."

(E) "Now, did the gun discharge? Thank goodness, no. Did it operate the way it was designed to? Thank goodness, no."

(F) "[F]or heaven's sake, [Defendant] could have just turned around and gone the other direction."

(G) "So to heck with you, Mr. Officer. 'Heck' is probably not for [sic] word I really wanted to use."

(H) "It was Mr. Jones['] intent to go at the officer rather than to escape the officer."

(I) "[A firearm] [i]t's a device designed to expel a projectile...by whatever means."

(J) "It doesn't say that the firearm had to be operable in order for you to find that it's a firearm."

(K) "[Y]ou must find that it's a firearm in order to get the armed part of the burglary or the armed part of the aggravated assault."

(L) "I respectfully submit to you the Defendant was so determined to outrun these officers he didn't care."

24

(M) "I suggested to you in opening it had to do with that she just didn't want to have a relationship."

Petitioner argues that these comments were not supported by the evidence and were either expressions of the prosecutor's personal opinions or personal attacks on defense counsel. He further argues that the comments likely inflamed the passions of the jury and caused the jury to return a guilty verdict against him.

This claim was raised in state court in Instance Two of Petitioner's second amended Rule 3.850 motion (Respondent's Ex. 14, pp. 7-9). In denying the claim, the state post-conviction court stated:

> Defendant alleges counsel was ineffective for failing to object to the State's closing arguments. Defendant claims that several statements were improper and calculated to inflame the jury. He further asserts that the outcome of the trial would have been different if counsel objected. Each of the comments is listed individually below:
>
> (A)   "Here's the good news. Thank goodness no one, including Mr. Jones, was injured." (*Exhibit B: Trial Transcript p. 386*).
>
> (B) "The fact is, he didn't care could very well be the mantra of his actions throughout everything that happened." (*Exhibit B: Trial Transcript p. 389*).
>
> (C) "The victim vilified." (*Exhibit B: Trial Transcript p. 410*).
>
> (D) "I'm sure that Mr. McClure did not intend to mislead you in his argument." (*Exhibit B: Trial Transcript p. 410*).
>
> (E) "Now, did the gun discharge? Thank goodness, no. Did it operate the way it was designed to? Thank goodness, no." (*Exhibit B: Trial Transcript p. 411*).
>
> (F) "[F]or heaven's sake, [Defendant] could have just turned around and gone the other direction." (*Exhibit B: Trial Transcript p. 412*).
>
> (G) "So to heck with you, Mr. Officer. 'Heck' is probably not for [sic] word I really wanted to use." (*Exhibit B: Trial Transcript, p. 412*).

(H) "It was Mr. Jones['] intent to go at the officer rather than to escape the officer." (*Exhibit B: Trial Transcript p. 386*).

(I) "[A firearm] [i]t's a device designed to expel a projectile ...by whatever means." (*Exhibit   B:   Trial Transcript p. 387*).

(J) "It doesn't say that the firearm had to be operable in order for you to find that it's a firearm." (*Exhibit B: Trial Transcript p. 387*).

(K) "[Y]ou must find that it's a firearm in order to get the armed part of the burglary or the armed part of the aggravated assault." (*Exhibit B: Trial Transcript pp. 387-88*).

(L) "I respectfully submit to you the Defendant was so determined to outrun these officers he didn't care." (*Exhibit B: Trial Transcript p. 389*).

(M) "I suggested to you in opening it had to do with the fact that she just didn't want to have a relationship with him anymore." (*Exhibit B: Trial Transcript p. 389*).

Closing argument is an opportunity for attorneys to comment on evidence and testimony, and to "explicate those inferences which may be reasonably drawn from the evidence." Merck v. State, 975 So. 2d 1054, 1061 (Fla. 2007); Bertolotti v. State, 476 So. 2d 130, 134   (Fla. 1985) ("The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence."). Both parties are afforded wide latitude "so that they may 'advance all legitimate arguments and draw logical inferences from the evidence.'" Rivera v. State, 840 So. 2d 284, 286 (Fla. 5th DCA 2003) (quoting McArthur v. State, 801 So. 2d 1037, 1040 (Fla. 5th DCA 2001)). When asserting that counsel was ineffective for failing to object to improper comments by a prosecutor, the defendant must demonstrate that the comments constitute reversible error. Lugo v. State, 2 So. 3d 1, 16 (Fla. 2008) ("where improper comments by a prosecutor do not constitute reversible error, the defendant 'cannot demonstrate prejudice requisite for a successful ineffective assistance of counsel claim, rendering summary denial of the issue appropriate.'") (quoting Hodges v. State, 885 So. 2d 338, 356 (Fla. 2004)).

The Court finds that all of the State's remarks were fair comments on the evidence, the logical inferences therefrom, and the law as stated in the jury instructions. None of the remarks, considered individually or together, were so inflammatory or prejudicial that the jury would have returned a verdict based upon anything other than the evidence. See Jones v. State, 666 So. 2d 995 (Fla.

5th DCA 1996). Counsel cannot be ineffective for failing to raise a baseless objection and there is no reasonable probability that Defendant was prejudiced. Accordingly, this claim is denied.

(Respondent's Ex. 15, pp. 4-6).

Petitioner has failed to show that the state courts' denial of this claim was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. Habeas relief is available based upon an improper prosecutorial remark only if it is so egregious that the proceeding is rendered fundamentally unfair. "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *See also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). *Darden*, 477 U.S. at 181, further explains:

The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 [643] ... (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." Id., at 642 ....

*Accord Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."). A reviewing court must evaluate an allegedly improper comment in the context of both the prosecutor's entire closing argument and the trial as a whole because "[c]laims of prosecutorial misconduct are fact specific inquiries which must be conducted against the backdrop of the entire record." *United States v. Hall*, 47 F.3d 1091, 1098 (11th Cir. 1995). *Accord United States v. Young*, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments

standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

The prosecutor's comments Petitioner identifies were made during closing arguments. Closing argument is designed to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). While he may not go beyond the evidence presented to the jury, the prosecutor is not limited to a bare recitation of the facts. The prosecutor may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984). In Florida, "[w]hile wide latitude is permitted in closing argument, *see Breedlove v. State*, 413 So.2d 1, 8 (Fla. 1982), this latitude does not extend to permit improper argument." *Gore v. State*, 719 So.2d 1197, 2000 (Fla. 1998). *See also McArthur v. State*, 801 So.2d 1037, 1040 (Fla. 5th DCA 2001) ("The courts generally allow wide latitude in closing arguments by permitting counsel to advance all legitimate arguments and draw logical inferences from the evidence.").

**1. There was no personal attack on defense counsel**

Petitioner asserts that the prosecutor impugned the integrity of defense counsel when he stated, "I'm sure that Mr. McClure did not intend to mislead you in his argument." (Respondent's Ex. 2, Vol. III, p. 410, lines 14-15). The statement was made in response to defense counsel's argument that:

> Mr. Migliore told you a little bit about what a firearm is and suggested to you it doesn't have to be operable. Well, I think Judge Luce is going to tell you that it has to be capable of expelling a projectile through the force of an explosion or be readily convertible for that purpose or have been intended for that purpose.

(Respondent's Ex. 2, Vol. III, p. 400, lines 6-12). It is apparent therefore that the prosecutor's remark was not a personal attack on the integrity of defense counsel but rather a comment in

response to what the prosecutor believed was a misstatement by defense counsel of the definition of "firearm."[4]   *See Scott v. State*, 66 So.3d 923, 930 (Fla.2011) ("'[a] prosecutor's comments are not improper where they fall into the category of an 'invited response' by the preceding argument of defense counsel concerning the same subject.") (quoting *Walls v. State*, 926 So.2d 1156, 1166 (Fla.2006) (alteration in original)).

## 2. The prosecutor's statements were comments about or reasonable inferences from the evidence

Petitioner contends that the prosecutor's remaining comments "were not supported by any evidence presented at trial, nor were reasonable inferences from the evidence." "It has long been held that a prosecutor may argue both facts in evidence and reasonable inferences from those facts." *Tucker v. Kemp*, 762 F.2d 1496, 1506 (11th Cir. 1985) (citation omitted). The state post-conviction court found "that all of the State's remarks were fair comments on the evidence, the logical inferences therefrom, and the law as stated in the jury instructions." Moreover, that court found that "[n]one of the remarks, considered individually or together, were so inflammatory or prejudicial that the jury would have returned a verdict based upon anything other than the evidence." (Respondent's Ex. 15, p. 5).

The state court's findings are supported by the record. Four comments were related to the gun Petitioner used during the offenses:

> (E) "Now, did the gun discharge? Thank goodness, no. Did it operate the way it was designed to? Thank goodness, no." (Respondent's Ex. 2, Vol. III, p. 411, lines 3-5);

---

4 The jury was instructed that a firearm "means any weapon, including a starter gun, which will, is designed to, and/or may be readily converted to expel a projectile by action of an explosive. The frame or receiver of any such weapon, any firearm muffler or firearm silencer, any destructive device or any machine gun. The term 'firearm' does not include an antique firearm unless the antique firearm is used in the commission of a crime." (Respondent's Ex. 2, Vol. III, p. 425, lines 20-25, p. 426, lines 1-4).

(I) "[A firearm] [i]t's a device designed to expel a projectile ...by whatever means." (*Id.*, p. 387, lines 15-17);

(J) "It doesn't say that the firearm had to be operable in order for you to find that it's a firearm." (*Id.*, p. 387, lines 19-21);

(K) "[Y]ou must find that it's a firearm in order to get the armed part of the burglary or the armed part of the aggravated assault." (*Id.*, p. 387, line 25, p. 388, lines 1-3).

The comment that the gun failed to discharge and failed to operate as it was designed to was fair comment on the witnesses' testimony that Petitioner aimed the gun at Victim James and pulled the trigger but the gun made only a clicking noise (Respondent's Ex. 2, Vol. II, p. 275, lines 14-15; Vol. III, p. 339, lines 19-23). *See United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984) (the prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence). And the three other statements were fair comment on the law as stated in the jury instructions.[5]

The prosecutor's remaining statements were either comments on facts in evidence or reasonable inferences from those facts. The statement that no one other than Victim James was injured was fair comment on the testimony that Petitioner aimed his gun at Victim James and other witnesses, and Corporal Gassen's testimony that Petitioner drove his vehicle directly at him (Respondent's Ex. 2, Vol. I, p. 149, lines 16-23; Vol. II, p. 267, lines 3-6). The statements that Petitioner "was so determined to outrun these officers he didn't care[,]" and he "didn't care could very well be the mantra of his actions throughout everything that happened" were fair suggestions of what the jury should conclude from the testimony that Petitioner endangered

---

5  The instruction on the definition of a "firearm" is noted in footnote 4, above. And the instructions on aggravated assault and aggravated burglary stated that the jury had to find those offenses were committed with a deadly weapon (Respondent's Ex. 2, Vol. III, p. 421, lines 21-22, p. 427, lines 19-25).

several people by waiving a gun at them, driving his vehicle at them, and driving his vehicle at a high rate of speed through red lights and in the wrong direction on the highway to avoid law enforcement (*See, e.g.,* Respondent's Ex. 2, Vol. II, p. 202, lines 19-24). And "[t]he victim vilified" comment (*see id.*, p. 410, lines 1-8) was an appropriate invited response to defense counsel's argument that Victim James was a "bitter woman" who "wanted to get back at [Petitioner] for cheating on her. . . ." (*Id.*, p. 403, lines 4-7).

The statement that "[i]t was Mr. Jones' intent to go at the officer rather than to escape the officer" was a reasonable inference from Victim James' testimony that there was nothing "physically" blocking Petitioner from driving his vehicle away from the officer rather than toward him (*Id.*, p. 342, lines 2-5). And the statements that Petitioner "could have just turned around and gone the other direction" and "to heck with you, Mr. Officer" (*id.*, p. 412, lines 1-15) were invited responses to defense counsel's argument that Petitioner did not intend to strike the officer with his vehicle but rather was driving away from Victim James' home and took evasive action when he approached and was surprised by the officer's vehicle (*Id.*, p. 395, lines 4-16). Finally, the prosecutor's statement that "I suggested to you in opening it had to do with the fact that [Victim James] just didn't want to have a relationship with [Petitioner] anymore" was relevant to Petitioner's motive for breaking into Victim James' house and abducting her, and a reasonable inference from Victim James' testimony that she took her house key back from Petitioner, was no longer Petitioner's girlfriend, and told Petitioner that she was not interested in reuniting (*Id.*, p. 325, lines 15-25; p. 326, lines 1-23).

As the Court has not found that the prosecutor's statements in closing argument were in any way improper, Petitioner has failed to show that counsel was deficient in failing to object to

them. Moreover, Petitioner has failed to show that the comments deprived him of a fair and

impartial trial. Consequently, Petitioner has failed to demonstrate that the state courts' denial of

this claim was an unreasonable application of *Strickland* or based on an unreasonable

determination of the facts. Accordingly, Ground Seven warrants no relief.

**Ground Eight: MR. JONES [sic] SIXTH AND FOURTEENTH AMENDMENT RIGHTS
OF THE U.S.C. WERE VIOLATED WHEN COUNSEL FAILED TO OBJECT TO THE
"REMAINED IN" INSTRUCTION GIVEN TO THE JURY.**

Petitioner contends that defense counsel was ineffective in failing to object to the

following jury instruction on burglary:

> . . .To prove the crime of burglary, the State must prove the following two
> elements beyond a reasonable doubt:
>
> Element one, Arthur Jones entered *or remained in* a structure owned by or
> in the possession of Ellecya James. . . .

(Respondent's Ex. 2, Vol. III, p. 426, lines 14-19) (emphasis added). Petitioner argues that

including "remained in" was confusing and misleading and "very well could have been the

determining factor in the jury finding [him] guilty of burglary."

This claim was raised in state court in Instance Seven of Petitioner's second amended

Rule 3.850 motion (Respondent's Ex. 14, pp. 16-17). In denying the claim, the state

post-conviction court stated:

> Defendant alleges that counsel was ineffective for failing to object to the jury
> instruction for burglary because it improperly included the words "remained in."
> He argues that, had counsel objected, the outcome of the trial would have been
> different because Defendant would have been acquitted of burglary.
>
> The record reflects that the trial court instructed the jury as follows:
>
> > To prove the crime of Burglary, the State must prove the following
> > two elements beyond a reasonable doubt:

1. ARTHUR JONES III entered or remained in a structure owned by or in the possession of Ellecya James.

2. At the time of entering the structure, ARTHUR JONES III, had the intent to commit an offense there in that structure.

(*Exhibit C: Jury Instructions*). Section 810.02(1)(a), Florida Statutes, defines "burglary" as "entering or remaining in a dwelling, structure, or conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." (*emphasis added*). The instruction accurately stated the law and counsel was not ineffective for failing to object to a legally accurate instruction. *See Rodriguez*, 919 So. 2d at 1272. Furthermore, Defendant fails to establish that, if the instruction had been modified to exclude the words "or remained," the outcome of the trial would have been different. This claim is denied.

(Respondent's Ex. 15, pp. 10-11).

The state post-conviction court has answered the question of what would have happened had counsel objected to the burglary instruction because it included the words "remained in"—the objection would have been overruled because the instruction accurately stated the law in Florida.[6] This Court must defer to the state court's determination of the underlying state law question. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) ("It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas

---

6  It appears including "remained in" was proper under Florida law, considering the defense's argument that Petitioner did not enter Victim James' house without permission. *See Saintelus v. State*, 935 So. 2d 51, 53 (Fla. 4th DCA 2006) (concluding that "remained in" alternative language in the burglary instruction was applicable where "the defense introduced evidence and argued that the defendant had the victim's consent to enter the residence."). On cross-examination of Victim James, defense counsel clearly emphasized that Victim James and Petitioner had known each other for a long time, had been in a romantic relationship with each other, and had lived together in Victim James' house (Respondent's Ex. 2, Vol. III, p. 345). Defense counsel also implied that Petitioner still had a key to the house and entered the house with the key (*Id.*). He also highlighted that Petitioner had been at the house earlier that night and had a conversation with Victim James (*Id.*, pp. 345-46). During closing, defense counsel argued, in pertinent part, that Petitioner and Victim James' relationship was "on and off" again (implying that they still may have been dating at the time of the offenses) (*id.*, p. 402), Victim James fabricated the events because Petitioner was cheating on her (*id.*, p. 403), and Petitioner's fingerprints were on the propane tank not because he used it to break into the house but because he handled it during a barbeque (*Id.*).

courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)). Consequently, Petitioner has failed to establish deficient performance or prejudice with respect to this claim. *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (Alabama Court of Criminal Appeals had already answered the question of what would have happened had counsel objected to the introduction of petitioner's statements based on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection).

Petitioner has failed to demonstrate that the state courts' resolution of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, Ground Eight does not warrant federal habeas relief.

Any of Petitioner's claims not addressed in this Order have been determined to be without merit.

It is therefore **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2. The **Clerk of the Court** shall enter judgment accordingly and is directed to close this case.

3. This Court should grant an application for a Certificate of Appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He cannot make this showing.[2] Accordingly, a Certificate of Appealability is

---

[2] Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts,

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. . . .If the court denies a certificate, a party may

**DENIED** in this case. And because he is not entitled to a Certificate of Appealability, he is not entitled to proceed on appeal *in forma pauperis*.

   **DONE AND ORDERED** in Tampa, Florida on September 21, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Petitioner, *pro se*
Counsel of Record

---

not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of
Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.